**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARSHA LEE MARCUM,

          Plaintiff,

v.                                          Case No. 3:19-cv-959-J-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

          Defendant.

_____

**OPINION AND ORDER**[1]

**I.  Status**

Marsha Lee Marcum ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a "hip problem," a "knee problem," an "ankle problem," a "back problem," a "neck problem," "speech loss," chronic obstruction pulmonary disease, emphysema, depression, and anxiety disorder. Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed November 15, 2019, at 72, 86, 102, 118, 239 (capitalization and emphasis omitted). Plaintiff filed an application for DIB on December 20, 2017, alleging a disability onset date of December 25, 2013. Tr. at 214.[2]

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed November 15, 2019; Reference Order (Doc. No. 14), entered November 18, 2019.

[2]      Although actually completed on December 20, 2017, see Tr. at 214, the protective filing date of the application is listed elsewhere in the administrative transcript as December 19, 2017, see, e.g., Tr. at 72.

On January 9, 2018, Plaintiff filed an application for SSI, alleging a disability onset date of December 25, 2013. Tr. at 206.[3] The applications were denied initially, Tr. at 71-84, 99, 139, 140-42 (DIB); Tr. at 85-98, 100, 143, 144-46 (SSI), and upon reconsideration, Tr. at 101-15, 133, 150, 151-56 (DIB); Tr. at 117-31, 134, 157-62, 163 (SSI).

On March 18, 2019, an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claims during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 37-70. At the time of the hearing, Plaintiff was forty-two years old. Tr. at 45. The alleged disability onset date was amended to October 3, 2017. See Tr. at 41, 48, 327. On April 29, 2019, the ALJ issued a Decision on Plaintiff's claims, finding Plaintiff not disabled through the date of the Decision. See Tr. at 19-31.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council, Tr. at 203-05, and submitted additional evidence in the form of a brief authored by Plaintiff's counsel, Tr. at 4, 5; see Tr. at 329-30 (brief). On June 19, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On August 19, 2019, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

---

[3]     Although actually completed on January 9, 2018, see Tr. at 206, the protective filing date of the application is listed elsewhere in the administrative transcript as December 19, 2017, see, e.g., Tr. at 86.

On appeal, Plaintiff makes three arguments: 1) "the ALJ erred in failing to give substantial weight to [Christopher Scuderi, D.O.'s[4]] medical opinion"; 2) "the ALJ's exclusion of limitations caused by [Plaintiff's] severe impairments from the [residual functional capacity ('RFC')] is not supported by substantial evidence"; and 3) "the ALJ erred in failing to consider [Plaintiff's] inability to pay for certain medical treatments." Plaintiff's Memorandum of Law in Support of Complaint and in Opposition to the Commissioner's Decision (Doc. No. 17; "Pl.'s Mem."), filed January 21, 2020, at 19-23 (first argument), 23-24 (second argument), 24 (third argument) (emphasis and some capitalization omitted). On April 16, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of Dr. Scuderi's opinions, which will likely require a reevaluation of Plaintiff's ability to afford treatment, as explained below.

On remand, reconsideration of Dr. Scuderi's opinions may impact the ALJ's RFC determination (Plaintiff's second argument). For this reason, the Court need not address the ALJ's RFC determination. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913

---

[4]     Dr. Scuderi is Plaintiff's primary care physician. Tr. at 713. Dr. Scuderi (sometimes along with a physician's assistant) has treated Plaintiff since March 2016. Tr. at 685 (March 21, 2016 treatment note indicating Plaintiff was a new patient); see Tr. at 615-99, 715-858, 877-1020 (treatment notes) (duplicates included). As Plaintiff's primary care physician, he has treated Plaintiff for a number of ailments, including leg weakness, depression, and anxiety.

F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 21-30. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since December 25, 2013, the alleged onset date."[6] Tr. at 21 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: generalized weakness of the lower extremities; mild spondylosis of the lumbar spine; chronic

---

[5]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[6]     The ALJ used the original alleged disability onset date instead of the amended date of October 3, 2017. This appears to be a typographical error as the Decision focuses on evidence on or after October 3, 2017. See generally Tr. at 18-31. The ALJ's error in this regard is therefore harmless, but the ALJ should nonetheless ensure he uses the correct disability onset date on remand.

obstructive pulmonary disease (COPD); a speech disorder; and a history of depression and anxiety." Tr. at 21 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 22 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform less than the full range of light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). Specifically, she has the ability to lift/carry and push/pull 20 pounds occasionally (up to one-third of the day), and 10 pounds frequently (up to two-thirds of the day), sit for four hours at a time and a total of eight hours during an eight-hour day, and stand and/or walk for two hours at a time and a total of six hours during an eight-hour day. She can occasionally climb ladders, stairs and ramps and occasionally balance, stoop, kneel, crouch, and crawl. She has no limitations regarding manipulation, vision, or communication but has environmental limitations precluding even moderate exposure to work hazards including unprotected heights and dangerous machinery. Mentally, she cannot perform complex tasks, but can perform simple, routine tasks consistent with unskilled work with concentration on those tasks for two-hour periods with normal breaks and a lunch.

Tr. at 23 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff is "unable to perform any past relevant work." Tr. at 29 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date"),[7] education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "there are jobs that exist in

---

[7]     On the amended alleged disability onset date, Plaintiff was forty years old and considered a younger individual. See Tr. at 71 (indicating date of birth); 20 C.F.R. §§ 404.1563(c), 416.963(c) (defining "younger person" as one under the age fifty).

significant numbers in the national economy that [Plaintiff] can perform," Tr. at 29 (emphasis and citation omitted), such as "Marker II"; "Assembler, Electrical Accessories I"; and "Blade Balancer," Tr. at 30. The ALJ concluded that Plaintiff "has not been under a disability . . . from December 25, 2013[ ] through the date of th[e D]ecision." Tr. at 30 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's

- 6 -

findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

### A.   Parties' Arguments

Plaintiff argues that "[i]n rejecting Dr. Scuderi's opinion, the ALJ erroneously asserted that 'there is nothing in the record to explain [Plaintiff's] reported weakness' which required the use of a walker or a cane." Pl.'s Mem. at 20 (quoting Decision). According to Plaintiff, "the record is replete with such evidence." <u>Id.</u> Plaintiff also contends the ALJ erred in not evaluating or mentioning the Third-Party Adult Function Report from Plaintiff's husband. <u>Id.</u> at 22-23.

Responding, Defendant asserts that "[w]hile Plaintiff may not agree with the ALJ's evaluation and final decision, Plaintiff cannot ask this Court to reweigh the evidence or substitute its judgment for the ALJ's judgment." Def.'s Mem. at 13 (citation omitted). Defendant argues that substantial evidence supports the ALJ's findings on "Plaintiff's conservative treatment, the mild findings in the objective testing, and the lack of evidence supporting Plaintiff's alleged weakness." <u>Id.</u> at 12 (citation omitted).

### B.   Applicable Law

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. <u>See</u> Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,844 (Jan. 18, 2017). Because Plaintiff filed

her claim after that date, the undersigned applies the revised rules and Regulations in effect at the time of the ALJ's Decision.[8]

Under the new rules and Regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[9] The following factors are relevant in determining the weight to be given to a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[8]       In making her argument on the ALJ's assessment of Dr. Scuderi's opinions, Plaintiff recognizes that the Regulations were revised, see Pl.'s Mem. at 21-22, but applies the treating physician rule adopted by the United States Court of Appeals for the Eleventh Circuit, see id. at 19-20. Defendant urges the Court to give Chevron deference to the new rules and apply them, rather than the Eleventh Circuit's treating physician rule. See Chevron U.S.A., Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 842-44 (1984) (establishing two-step process for analyzing agency's regulatory construction of statute it administers). Even if the treating physician rule applies, the matter would nonetheless be due to be reversed and remanded under that rule as well. The Court thus need not address Defendant's argument on Chevron deference. See Jackson, 801 F.2d at 1294 n.2; Demenech, 913 F.2d at 884.

[9]       "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. §§ 404.1502, 416.902 (defining "[a]cceptable medical sources").

However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

## C.  Analysis

On January 19, 2018, Dr. Scuderi completed a Physical Assessment containing opinions about the effects of Plaintiff's physical impairments on Plaintiff's ability to perform work-related functions. See Tr. at 706-07. Dr. Scuderi opined in relevant part that Plaintiff can stand for only one hour in an eight-hour workday, that she would need to take unscheduled one-hour breaks during an eight-hour workday, and that she would be absent from work more than four times per month due to her impairments or treatments. Tr. at 706-07. Dr. Scuderi also opined that Plaintiff would need to recline or lie down during a hypothetical eight-hour workday in excess of the typical fifteen-minute break in the morning, the thirty- to sixty-minute lunch break, and the typical fifteen-minute break in the afternoon. Tr. at 706.

The ALJ found that Dr. Scuderi's opinions were "not persuasive" and explained the supportability and consistency factors as follows. Tr. at 28. The ALJ stated Dr. Scuderi's

opinions are "inconsistent with the limited objective medical evidence and conservative treatment." Tr. at 28. According to the ALJ, the limitations opined by Dr. Scuderi "are completely inconsistent with the objective medical testing, which failed to show anything more than mild spondylosis of the lumbar spine and fails to provide a reason for the need for a walker." Tr. at 28 (citation omitted). The ALJ found that "[t]here is nothing in the record to explain Plaintiff's reported weakness[,] and diagnostic testing, including electrodiagnostic testing, has been completely normal." Tr. at 28.

Upon review of the record and due consideration, the undersigned finds that the ALJ erred in his assessment of Dr. Scuderi's opinions for the reasons below.

The ALJ's finding that "<u>nothing</u> in the record" explains the weakness in Plaintiff's lower extremities, Tr. at 28 (emphasis added), is not supported by substantial evidence. As Plaintiff points out, medical records show that Plaintiff's gait, ambulation, and balance are impaired, that she used a walker for much of the relevant period, and that she now uses cane. <u>See, e.g.</u>, Tr. at 538-39 (October 4, 2017 physical therapy treatment note indicating that Plaintiff's transfers, gait, activity tolerance, and balance are impaired; that Plaintiff's sensation was "decreased [to] light touch and tingling [was] reported in L4-L5 dermatomes"; that Plaintiff "ambulated 50 ft with Rolling Walker, gait belt, Contact Guard Assist (CGA)"; and describing her gait quality as, "[D]ecreased gait speed, foot clearance (L worse than R), step length, increased time, decreased hip flexion");[10] Tr. at 786 (October 5, 2017 physical therapy treatment note indicating Plaintiff "ambulated 100 ft with Rolling Walker, gait belt, Contact Guard Assist (CGA)"; describing her gait quality as,

---

[10]     The administrative transcript contains duplicates of a number of progress notes. The undersigned does not cite duplicates in this Opinion and Order, unless otherwise noted.

"[S]low cadence, narrow BOS,[11] decreased B step length";[12] and indicating that physical therapist recommended a rolling walker); Tr. at 633, 637 (November 3, 2017 progress note indicating Plaintiff ambulated with a walker and had an abnormal gait); Tr. at 621, 630 (January 19, 2018 and December 18, 2017 progress notes indicating Plaintiff's gait was "slow with walker" (emphasis omitted)); Tr. at 621 (January 19, 2018 progress note indicating Plaintiff had an ataxic gait); Tr. at 720 (February 19, 2018 progress note indicating Plaintiff's gait was "slow but improved with walker" (emphasis omitted)); Tr. at 878, 882 (April 27, 2018 progress note indicating Plaintiff had an abnormal gait and her gait was "slow and steady with walker" (emphasis omitted)); Tr. at 866 (May 10, 2018 pain management treatment note indicating Plaintiff had "decrease[d] sensation to light touch left L4/L5 dermatomal distribution compared to the right" and was positive for clonus in the left ankle); Tr. at 1014 (January 30, 2019 emergency department note indicating Plaintiff ambulated with a cane).[13] Progress notes also show decreased strength in Plaintiff's lower extremities. See, e.g., Tr. at 538-39, 560 (October 4, 2017); Tr. at 621 (January 19, 2017); Tr. at 630 (December 19, 2017).

Assuming the ALJ found that this evidence—some of which could be tied to Plaintiff's subjective complaints—is not "entirely consistent" with the rest of the evidence, the undersigned is unable to determine whether this finding is supported by substantial

---

[11]   "BOS" likely stands for base of support.

[12]   It appears the "B" in the phrase "decreased B step length" was added in error, and the author of the progress note likely intended to write, "decreased step length."

[13]   At the hearing, Plaintiff presented with a cane, which she said she started using about six months prior to the hearing—around September 2018. Tr. at 50. February 2018 progress notes show she was "working towards using a cane." See Tr. at 715.

evidence. Tr. at 25 (finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record as explained in th[e D]ecision"). [14] Although the ALJ referenced some of the above medical notations regarding Plaintiff's gait, ambulation, balance, and strength, he did not articulate specifically any inconsistencies between them and the other evidence of record, nor is the inconsistency obvious. To the extent the ALJ found them to be inconsistent with the objective evidence, the Eleventh Circuit has "emphatically rejected the notion that to be disabling subjective claims of pain must be supported by objective medical evidence or by clinical or laboratory findings." Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982) (citation omitted); see also 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (providing that ALJ "will not reject [a claimant's] statements about the intensity and persistence of [his or her] pain or other symptoms or about the effect [his or her] symptoms have on [his or her] ability to work . . . solely because the available objective medical evidence does not substantiate [the claimant's] statements").

Similarly, because of the subjective nature of Plaintiff's physical impairments (particularly, her "generalized weakness of the lower extremities," Tr. at 21 (emphasis

---

[14] "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002); see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

omitted)), the ALJ's heavy reliance on the inconsistencies between Dr. Scuderi's opinions and the objective evidence is insufficient.

The only other evidence the ALJ found to be inconsistent with Dr. Scuderi's opined limitations—Plaintiff's conservative treatment—is insufficient for this Court to find that substantial evidence supports the ALJ's assessment of Dr. Scuderi's opinions. Tr. at 28. The record, including Plaintiff's testimony, shows that Plaintiff did not have insurance and could not afford treatment during much of the relevant period. See Tr. at 758 (October 2017 telephone encounter note indicating nurse had an "extensive discussion with [Plaintiff's] husband re: options of care" during which the husband reported he has health insurance but cannot afford coverage for Plaintiff);[15] Tr. at 615 (January 2018 progress note indicating Plaintiff "now has insurance"); Tr. at 52 (Plaintiff testifying she lost her insurance coverage the week after she started pain management, which was on May 10, 2018, see Tr. at 864); Tr. at 961 (July 2018 progress note indicating Plaintiff "recently lost her insurance and thus has not been able to go back to see her pulmonologist or PCP"); Tr. at 972 (October 2018 progress note indicating Plaintiff "has no insurance and no [PCP] so it is hard to get care"); Tr. at 1008 (January 2019 progress note indicating Plaintiff "does not have insurance so she can[not] pay a self[-]pay fee"). The record also shows that Plaintiff did not qualify for medical financial assistance. See Tr. at 758 (October 2017 telephone encounter note indicating husband reported Plaintiff had a "Shands Card" but because of his fifty-cent hourly pay raise, "she lost her card"); Tr. at 52 (Plaintiff testifying

---

[15]    During this October 2017 phone call, Plaintiff's husband stated he might be able afford to pay for Plaintiff's follow-up visit with her primary care physician the following week. Tr. at 758. He reported, however, that he was "a little short of work [hours]" that week because he was "attending to [Plaintiff's] needs while she was hospitalized . . . ." Tr. at 758.

she had a Shands Card "years ago," but when her husband got a fifty-cent raise, "they dropped [her]"); Tr. at 52 (Plaintiff testifying she "tried the We Care program" but did not qualify). Moreover, according to the May 10, 2018 pain management treatment note, Plaintiff was scheduled for medial branch block injections in her cervical spine, and lumbar injections would be considered in the future. Tr. at 867. It does not appear from the administrative transcript that Plaintiff ever underwent either of these injections. Evidently, she did not return to pain management because, as noted above, she lost her insurance shortly after her first appointment with pain management. See Tr. at 52, 961.

Before assessing Dr. Scuderi's opinions, the ALJ summarized some of the evidence about Plaintiff's lack of insurance. See Tr. at 27. In assessing Plaintiff's mental health impairments, the ALJ found that "[h]er use of cigarettes and marijuana is inconsistent with her reported inability to afford a psychiatric counselor or ongoing use of psychiatric medications, which she has stopped using." Tr. at 28. This reason, however, is not supported by substantial evidence. Plaintiff testified that she smokes marijuana but that a friend provides her with the marijuana at no cost. Tr. at 69. The ALJ actually acknowledged that Plaintiff testified she did not pay for the marijuana, see Tr. at 22, 24, so it is unclear why he found Plaintiff's use of marijuana to be inconsistent with her alleged inability to afford treatment. There is also no indication that the ALJ rejected this portion of Plaintiff's testimony. Accordingly, to the extent the ALJ found that Plaintiff's inability to afford

treatment was not the reason for the conservative nature of her treatment, this finding is not supported by substantial evidence.[16]

On remand, the ALJ shall reconsider Dr. Scuderi's opinions, taking into account the record as a whole, including the reasons for Plaintiff's conservative treatment, and not just the objective evidence. In doing so, the ALJ should also consider the function report completed by Plaintiff's husband on January 24, 2018. See Tr. at 318-25 (third-party function report); supra p. 7 (Plaintiff's argument regarding the third-party function report).

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reevaluate the opinions of Dr. Christopher Scuderi, considering the record as a whole (including Plaintiff's husband's third-party function report), and clearly articulating, if appropriate, any inconsistencies between the opinions and the record;

(B)    If appropriate, reevaluate the reasons for Plaintiff's conservative treatment (e.g., her lack of insurance);

---

[16]    Because in making his disability finding the ALJ did not substantially rely on Plaintiff's noncompliance with or lack of treatment, the ALJ's error in considering Plaintiff's ability to afford treatment is not in itself a basis for reversal. See Dawkins v. Bowen, 848 F.2d 1211, 1213-14 (11th Cir. 1988) (stating that when an ALJ's finding that a claimant is not disabled is "inextricably tied to [a] finding of noncompliance," an ALJ is required to determine whether the claimant's "poverty excuses noncompliance"). The ALJ's error in this regard, however, is nonetheless one of the reasons why the ALJ's assessment of Dr. Scuderi's opinions is not supported by substantial evidence.

(C)     If appropriate, address the other issues raised by Plaintiff in this appeal; and

(D)     Take such other action as may be necessary to resolve these claims properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on September 29, 2020.

JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record